UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KENNETH HILL,<br><br>    Plaintiff,<br><br>v.<br><br>SCOTT KERNAN, et al..<br><br>    Defendants. | No. 2:19-cv-0184 TLN DB P<br><br>ORDER AND FINDINGS AND RECOMMENDATIONS |

Plaintiff is a state prisoner proceeding pro se with a civil rights action under 42 U.S.C. § 1983. Before the court is plaintiff's first amended complaint for screening.[1] For the reasons set forth below, this court will recommend dismissal of some claims and dismiss the remaining claims with leave to amend.

## SCREENING

**I. Legal Standards**

The court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or employee of a governmental entity. See 28 U.S.C. § 1915A(a). The court must dismiss a complaint or portion thereof if the prisoner has raised claims

---

[1] Defendants removed this case from Sacramento County Superior Court on January 30, 2019 and paid the filing fee. (ECF No. 1.) Plaintiff filed an amended complaint shortly thereafter. (ECF No. 4.)

1

that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. See 28 U.S.C. § 1915A(b)(1) & (2).

A claim is legally frivolous when it lacks an arguable basis either in law or in fact. Neitzke v. Williams, 490 U.S. 319, 325 (1989); Franklin v. Murphy, 745 F.2d 1221, 1227-28 (9th Cir. 1984). The court may, therefore, dismiss a claim as frivolous where it is based on an indisputably meritless legal theory or where the factual contentions are clearly baseless. Neitzke, 490 U.S. at 327. The critical inquiry is whether a constitutional claim, however inartfully pleaded, has an arguable legal and factual basis. See Franklin, 745 F.2d at 1227. Rule 8(a)(2) of the Federal Rules of Civil Procedure "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)).

However, in order to survive dismissal for failure to state a claim a complaint must contain more than "a formulaic recitation of the elements of a cause of action;" it must contain factual allegations sufficient "to raise a right to relief above the speculative level." Bell Atlantic, 550 U.S. at 555. In reviewing a complaint under this standard, the court must accept as true the allegations of the complaint in question, Hospital Bldg. Co. v. Rex Hospital Trustees, 425 U.S. 738, 740 (1976), construe the pleading in the light most favorable to the plaintiff, and resolve all doubts in the plaintiff's favor. Jenkins v. McKeithen, 395 U.S. 411, 421 (1969).

The Civil Rights Act under which this action was filed provides as follows:

> Every person who, under color of [state law] . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution . . . shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. The statute requires that there be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by plaintiff. See Monell v. Dept. of Social Servs., 436 U.S. 658 (1978); Rizzo v. Goode, 423 U.S. 362 (1976). "A person 'subjects' another to the deprivation of a constitutional right, within the meaning of §

2

1983, if he does an affirmative act, participates in another's affirmative acts or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).

**II. Analysis**

    **A. Allegations of the First Amended Complaint**

Plaintiff complains of conduct that occurred at California State Prison, Sacramento ("CSP-Sac") in 2017. Plaintiff identifies the following seven defendants: (1) California Department of Corrections and Rehabilitation ("CDCR"); (2) CSP-Sac; (3) Scott Kernan, Secretary of the CDCR; (4) M. Voong, Chief, Office of Appeals; (5) H. Liu, Appeals Examiner; (6) David Baughman, Warden, CSP-Sac; and (7) Y. Ayala, Correctional Counselor I at CSP-Sac.

Plaintiff alleges that prior to his placement in administrative segregation ("ad seg") at High Desert State Prison ("HDSP") in early 2017, he was eligible for family overnight visits. His wife and son were approved visitors. In April 2017, his mental health treatment was increased from CCCMS to EOP.[2] On May 5, 2017, plaintiff was transferred to CSP-Sac so that he could receive the EOP level of care.

In July 2017, plaintiff was released from ad seg at CSP-Sac. On August 13, 2017, he submitted an application to defendant Ayala to participate in the family visiting program so that his wife and son could visit. Initially, Ayala told plaintiff that EOP inmates could not have family visits. After plaintiff informed Ayala that he had been getting family visits while at other prisons, Ayala told him she would "look into it and get back to him."

On September 8, 2017, Ayala denied plaintiff's application on the basis that the prison did not have a copy of his marriage certificate. Several days later, plaintiff provided Ayala with his copy of his marriage certificate. However, Ayala refused to accept it directly from plaintiff. And, she informed him that due to a pending rules violation report ("RVR") even if his wife submitted the original marriage certificate, his application for family visits would be denied.

---

[2] CCCMS is the abbreviation for Correctional Clinical Case Management System and EOP is the abbreviation for Enhanced Outpatient Program. Both are prison mental health care program designations. Cal Code Regs., tit. 15, § 3040.1; Coleman v. Brown, 28 F. Supp. 3d 1068, 1075 (E.D. Cal. 2014).

3

Plaintiff contends that he was eligible for family visits because he had not yet been found guilty. He argues that Ayala's reasons for denying his application were pretexts for her real reason, that plaintiff was a participant in the EOP program. Plaintiff then filed a staff complaint against Ayala, in which he contended her actions were retaliatory and discriminatory.

On October 24, 2017, defendant Baughman denied plaintiff's complaint and request for family visits. Baughman relied on a February 2017 memorandum issued by defendant Kernan, which "repealed" the portion of the regulations that had permitted plaintiff family visits if he had not yet been found guilty of an RVR. Plaintiff contends Kernan failed to comply with the Administrative Procedures Act in promulgating this change.

Plaintiff appealed to the third level of administrative review. Shortly thereafter, plaintiff submitted another request for family visits to defendant Ayala, which she granted. Defendant Liu later conducted the third level review of plaintiff's appeal. Plaintiff contends he did so under the "supervision" of defendant Voong and "on behalf of" defendant Kernan. Liu denied plaintiff's appeal. Voong reviewed and approved that denial.

Plaintiff states that he had a family visit on May 25, 2018. However, he complains that he was transferred to B unit for his visit because the facilities in A unit, where he and other EOP participants were housed, had inadequate facilities. Plaintiff maintains this amounted to disparate treatment for EOP participants.

Plaintiff also alleges that he attempted to participate in the Prison Industry Authority ("PIA") work program by submitting a request in October 2017. However, Ayala denied that request, telling plaintiff he was ineligible due to his EOP status, and later, in writing, stating he was ineligible due to plaintiff's RVRs. Eventually, plaintiff's request to be placed on the waitlist for a PIA job was granted by a different counselor in January 2018.

Plaintiff alleges defendants' actions aggravated his serious mental disorders of major depression, anxiety, anger, and PTSD. In addition, they caused him to have homicidal and suicidal urges and to go on two hunger strikes.

Plaintiff makes the following claims: (1) defendants discriminated against him based on his mental illness when they refused to allow him to participate in the family visiting program for six

months. Plaintiff alleges this discrimination violated the Fourteenth Amendment; the Americans with Disabilities Act ("ADA"); and the Rehabilitation Act ("RA"). (2) Defendants Kernan, Voong, Liu, and Baughman denied plaintiff due process when they violated the Administrative Procedures Act. (3) Defendants were deliberately indifferent to plaintiff's serious mental health disorders in violation of the Eighth Amendment.

Plaintiff seeks declaratory relief and compensatory and punitive damages.

### B. Does Plaintiff State Cognizable Claims?

#### 1. Equal Protection

Plaintiff's Fourteenth Amendment argument appears to be that he was denied equal protection of the laws based on his mental disability because his participation in the EOP program was the real basis for defendants' denial of family visits. The Equal Protection Clause requires that persons who are similarly situated be treated alike. City of Cleburne v. Cleburne Living Center, Inc., 473 U.S. 432, 439 (1985); Hartmann v. Calif. Dept. of Corrs. and Rehab., 707 F.3d 1114, 1123 (9th Cir. 2013); Furnace v. Sullivan, 705 F.3d 1021, 1030 (9th Cir. 2013); Shakur v. Schriro, 514 F.3d 878, 891 (9th Cir. 2008). An equal protection claim may be established by showing that defendants intentionally discriminated against plaintiff based on his membership in a protected class, Hartmann, 707 F.3d at 1123, or that similarly situated individuals were intentionally treated differently without a rational relationship to a legitimate state purpose, Engquist v. Oregon Dept. of Agriculture, 553 U.S. 591, 601–02 (2008). An Equal Protection claim may also exist where a policy that is neutral on its face has a disproportionate, or "disparate," impact on an identifiable group. Village of Arlington Heights v. Metro. Hous. Dev. Corp., 429 U.S. 252, 264-66 (1977).

Disability, including disability based on mental illness, is not a suspect class for Equal Protection purposes. Pierce v. County of Orange, 526 F.3d 1190, 1225 (9th Cir. 2008). In determining whether a disabled inmate is similarly situated to non-disabled inmates, the Court should ask "whether the disabled plaintiff is equally capable for the purpose at issue." Hansen v. Rimel, 104 F.3d 189, 190 (8th Cir. 1997), see also Clark v. California, No. C 96–1486 FMS, 1998 WL 242688, *4–5 (N.D. Cal. May 11, 1998) (where developmentally disabled prisoners lacked

skills to fill out forms, thereby limiting their access to medical care and educational programming, for purposes of Equal Protection analysis they were not similarly situated to non-developmentally disabled prisoners). Claims brought under any theory must satisfy the intent requirement, that is, the plaintiff must show that some discriminatory purpose underlies the policy. See Village of Arlington Heights, 429 U.S. at 264-66; Pierce, 526 F.3d at 1225.

"There must be a rational basis for distinctions by prison officials in the application of visitation policies to similarly situated inmates." Africa v. Vaughan, 998 F. Supp. 552, 554 (E.D. Pa. 1998); see also Daniel v. Rolfs, 29 F. Supp. 2d 1184, 1188 (E.D. Wash. 1998). However,

> equal protection is not a license for courts to judge the wisdom, fairness, or logic of legislative choices. In areas of social and economic policy, a statutory classification that neither proceeds along suspect lines or infringes fundamental constitutional rights must be upheld against equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification.

Fed. Comm. Com'n v. Beach Comm., Inc., 508 U.S. 307, 313 (1993).

Here, plaintiff contends he was not permitted family visits because he participated in the EOP program. However, the facts alleged by plaintiff show that the only person he is alleging engaged in discrimination on that basis is defendant Ayala. He alleges that Ayala initially denied his request for family visits by telling him that he was not permitted them since he was an EOP participant. According to plaintiff, Ayala then used his lack of a marriage license and, after that, his pending RVR as pretexts for discriminating against him based on his EOP status. Plaintiff does not contend that the denial of his appeals based on his pending RVR were pretexts for discrimination.

One basic problem with plaintiff's claim is that, from the facts alleged, it appears that Ayala was not alone in believing, even if it was incorrect, that plaintiff's RVR was a reason that he was not eligible for family visits. Plaintiff fails to show that Ayala relied upon his EOP status to deny him family visits.

Plaintiff also alleges that Ayala refused to place him on the PIA job waitlist based on his disability and that the family visitation room in the EOP unit at CSP-Sac is inadequate. However, plaintiff fails to allege he suffered any injury as a result of these two contentions. First, shortly

6

after Ayala's action, plaintiff was placed on the PIA job waitlist. Second, plaintiff was able to have family visitation in another unit at CSP-Sac. He does not allege that he was denied family visitation in appropriate facilities. Plaintiff fails to state an equal protection claim on either of these bases as well.

Finally, plaintiff's equal protection claim is also invalid because he contends his only injury is mental and emotional distress. Relief for mental and emotional injury is specifically excluded for prisoner actions under § 1983. 42 U.S.C. § 1997e(e) (prisoner may not maintain an action for damages for mental or emotional injury without a prior showing of physical injury). Accordingly, this court will recommend dismissal of plaintiff's equal protection claim.

### 2. ADA and RA

Plaintiff alleges discrimination based on his mental health disability in violation of the ADA and RA. To state claims under both laws, a plaintiff must allege disparate treatment or discrimination. See 42 U.S.C. § 12132 (ADA); 29 U.S.C. § 794 (RA); Lee v. City of Los Angeles, 250 F.3d 668, 691 (9th Cir. 2001) ("If a public entity denies an otherwise 'qualified individual' 'meaningful access' to its 'services, programs, or activities' 'solely by reason of' his or her disability, that individual may have an ADA claim against the public entity."); Atcherley v. Hanna, No. 2:13-cv-0576 AC P, 2014 WL 2918852, at *7 (E.D. Cal. June 26, 2014) (The elements of claims under the ADA and the RA are functionally the same.)

For the same reasons described in the previous section, plaintiff fails to state any cognizable claims that he was subjected to any discrimination or disparate treatment based on his mental health or participation in the mental health services program. The fact that defendant Ayala may have initially understood that plaintiff's participation in the EOP program prevented him from some activities does not mean his EOP status was the bases for her denial of plaintiff's family visits or that she was intentionally discriminating against plaintiff based on his EOP status. Plaintiff fails to state claims under the ADA and RA. Because relief for mental and emotional injury appear to be permitted under these statutes, this court will give plaintiff leave to amend his ADA and RA claims.

////

Plaintiff is advised, however, that claims under the ADA and RA are most appropriately brought against the public entity responsible for the alleged discrimination. The proper defendant in an ADA action is the public entity responsible for the alleged discrimination. United States v. Georgia, 546 U.S. 151, 153 (2006). State correctional facilities are "public entities" within the meaning of the ADA. See 42 U.S.C. § 12131(1)(A) & (B); Penn. Dept. of Corrs. v. Yeskey, 524 U.S. 206, 210 (1998); Armstrong v. Wilson, 124 F.3d 1019, 1025 (9th Cir. 1997). However, a state official sued in her official capacity is, in effect, a suit against the government entity and is an appropriate defendant in an ADA action. See Applegate v. CCI, No. 1:16-cv-1343 MJS (PC), 2016 WL 7491635, at *5 (E.D. Cal. Dec. 29, 2016) (citing Miranda B. v. Kitzhaber, 328 F.3d 1181, 1187-88 (9th Cir. 2003); Kentucky v. Graham, 473 U.S. 159, 165 (1985)).

To state a claim under the ADA and RA, plaintiff must show: (1) he is a "qualified individual with a disability;" (2) he was either excluded from participation in or denied the benefits of a public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (3) such exclusion, denial of benefits, or discrimination was by reason of his disability. McGary v. City of Portland, 386 F.3d 1259, 1265 (9th Cir. 2004); see also Lee v. City of Los Angeles, 250 F.3d 668, 691 (9th Cir. 2001) ("If a public entity denies an otherwise 'qualified individual' 'meaningful access' to its 'services, programs, or activities' 'solely by reason of' his or her disability, that individual may have an ADA claim against the public entity."). Further, "[t]o recover monetary damages under Title II of the ADA, a plaintiff must prove intentional discrimination on the part of the defendant." Duvall v. County of Kitsap, 260 F.3d 1124, 1138 (9th Cir. 2001).

### 3. Eighth Amendment Deliberate Indifference

Plaintiff alleges defendants were deliberately indifferent to his serious mental health disorder. Where a prisoner's Eighth Amendment claim arises in the context of medical care, the prisoner must allege and prove "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Estelle v. Gamble, 429 U.S. 97, 106 (1976). An Eighth Amendment medical claim has two elements: "the seriousness of the prisoner's medical need and the nature of the defendant's response to that need." McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992),

8

overruled on other grounds by WMX Techs., Inc. v. Miller, 104 F.3d 1133 (9th Cir. 1997) (en banc). By establishing the existence of a serious medical need, a prisoner satisfies the objective requirement for proving an Eighth Amendment violation. Farmer v. Brennan, 511 U.S. 825, 834 (1994). The prisoner must then satisfy the subjective requirement – showing that prison officials responded to the serious medical need with deliberate indifference. See Farmer, 511 U.S. at 834.

Plaintiff does not show that defendants acted with deliberate indifference to his mental health needs. He does not show defendants denied, delayed, or intentionally interfered with his medical care. Hutchinson v. United States, 838 F.2d 390, 393-94 (9th Cir. 1988). To the extent plaintiff is alleging that defendants should have known their actions would cause plaintiff stress, he fails to show that defendants in fact had that knowledge or that they had the sort of medical training required to understand that their actions might harm plaintiff's mental health. Finally, again, because plaintiff seeks relief only for mental and emotional injuries, this claim is not cognizable under § 1983. This court will recommend its dismissal.

**4. Due Process**

In his final claim, plaintiff alleges defendants Kernan, Voong, Liu, and Baughman denied him due process when Kernan made changes to regulations, and the other defendants relied on those changes, resulting in further denial of plaintiff's right to family visits. According to plaintiff, Kernan's changes were made in violation of the Administrative Procedures Act. Initially, the court notes that the Ninth Circuit has declined to recognize a prisoner's constitutional right to receive visits, stating that "it is well-settled that prisoners have no constitutional right while incarcerated to contact visits." Gerber v. Hickman, 291 F.3d 617, 621 (9th Cir. 2002) (en banc); see also Keenan v. Hall, 83 F.3d 1083, 1092 (9th Cir. 1996) (affirming dismissal of prisoner's claim challenging regulation that denied him visits from persons other than his immediate family); Barnett v. Centoni, 31 F.3d 813, 817 (9th Cir. 1994) (per curiam) (holding that prisoners do not have a constitutional right to contact visitation privileges); Toussaint v. McCarthy, 801 F.2d 1080, 1114 (9th Cir.1986) ("To the extent that denial of contact visitation is restrictive and even harsh, it is part of the penalty that criminals pay for their offenses against society."), abrogated in part on other grounds by Sandin v. Conner, 515 U.S. 472 (1995).

Plaintiff fails to show the changes to the family visitation regulations violated the Due Process Clause. The guarantees of federal due process apply only when a constitutionally-protected liberty or property interest is at stake. Tellis v. Godinez, 5 F.3d 1314, 1316 (9th Cir. 1993). The Ninth Circuit has held that a plaintiff cannot, as a matter of law, state a due process claim under 42 U.S.C. § 1983 based solely on the fact that the plaintiff was subjected to a rule that is invalid under state law. Lone Star Security & Video, Inc. v. City of Los Angeles, 584 F.3d 1232, 1236 (9th Cir.2009). In Lone Star, the Court of Appeals concluded that the city ordinance of which the plaintiffs complained "does not interfere with one of the fundamental rights or liberty interests that enjoy heightened protection against government interference under the substantive component of the due process clause," and it did not represent "an abuse of power lacking any reasonable justification in the service of a legitimate governmental objective." Id. at 1236 (internal quotation marks omitted). Likewise here, a restriction on family visitation does not interfere with any fundamental right or lack any justification.

As the Supreme Court stated in Sandin, 515 U.S. at 483–84, "[s]tates may under certain circumstances create liberty interests which are protected by the Due Process Clause. But these interests will be generally limited to freedom from restraint which ... imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Here, the hardship of which plaintiff complains is that he has been subjected to a rule that he says is invalid under state law. As Lone Star makes clear, that is insufficient to make out a claim for relief under § 1983.

To the extent plaintiff is directly alleging a violation of the Administrative Procedures Act, that issue is a matter of state law, which is not cognizable under 42 U.S.C. § 1983. See Jones v. Wyrick, No. 2:17-0165 CKD P, 2017 WL 2473121, at *3 (E.D. Cal. June 8, 2017) Wilson v. Kernan, No. CIV S-07-0352 MCE EFB P, 2008 WL 4754761, at *3 (E.D. Cal. Oct. 28, 2008), rep. and reco. adopted, 2009 WL 151102 (E.D. Cal. Jan., 21, 2009). Because the court finds above that plaintiff fails to state any federal law claims, it will not exercise supplemental

////

////

jurisdiction over this potential state law claim.[3] See Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 (1988) (when federal claims are eliminated before trial, district courts should usually decline to exercise supplemental jurisdiction).

## CONCLUSION

Plaintiff fails to state any potentially cognizable claims under 42 U.S.C. § 1983. The court will recommend dismissal of plaintiff's claims under § 1983 that he was denied equal protection and due process in violation of the Fourteenth Amendment and his claim for deliberate indifference under the Eighth Amendment. The court will dismiss with leave to amend plaintiff's claims under the ADA and RA. Plaintiff is advised to carefully choose which defendant or defendants he will seek relief against under the ADA and RA. As described above, an ADA and RA claim may be stated against the public entity or against a prison official in their official capacity.

Further, to state a claim against defendants who denied appeals, a prisoner must show that each of them was personally aware of the conduct complained of and purposefully failed to pursue a remedy. Jett v. Penner, 439 F.3d 1091, 1098 (9th Cir. 2006) (prison officials, particularly those in administrative positions, may be "liable for deliberate indifference when they knowingly fail to respond to an inmate's requests for help"). Typically, denying a prisoner's administrative appeal does not cause or contribute to the underlying violation. See George v. Smith, 507 F.3d 605, 609 (7th Cir. 2007); Hernandez v. Cate, 918 F. Supp. 2d 987, 1018 (C.D. Cal. 2013). Further, supervisory officials "may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior." Ashcroft v. Iqbal, 556 U.S. 662, 676 (2009). Rather, a plaintiff must establish that each individual "[g]overnment-official defendant, through the official's own individual actions, has violated the Constitution." Id. In other words, supervisory officials "cannot be held liable unless they themselves" violated a constitutional right. Id. Thus, supervisory liability can be imposed only if (1) the supervisor was personally involved in the constitutional deprivation, or (2) there is a sufficient causal connection between the

---

[3] The court takes no position on whether plaintiff would be able to successfully pursue his claim in state court.

supervisor's wrongful conduct and the constitutional violation. Hansen v. Black, 885 F.2d 642, 646 (9th Cir. 1989).

In an amended complaint, plaintiff must address the problems with his complaint that are explained above. Plaintiff is advised that in an amended complaint he must clearly identify each defendant and the action that defendant took that violated his constitutional rights. The court is not required to review exhibits to determine what plaintiff's charging allegations are as to each named defendant.

If plaintiff wishes to add a claim, he must include it in the body of the complaint. The charging allegations must be set forth in the amended complaint so defendants have fair notice of the claims plaintiff is presenting. That said, plaintiff need not provide every detailed fact in support of his claims. Rather, plaintiff should provide a short, plain statement of each claim. See Fed. R. Civ. P. 8(a).

Any amended complaint must show the federal court has jurisdiction, the action is brought in the right place, and plaintiff is entitled to relief if plaintiff's allegations are true. It must contain a request for particular relief. Plaintiff must identify as a defendant only persons who personally participated in a substantial way in depriving plaintiff of a federal constitutional right. Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978) (a person subjects another to the deprivation of a constitutional right if he does an act, participates in another's act or omits to perform an act he is legally required to do that causes the alleged deprivation). "Vague and conclusory allegations of official participation in civil rights violations are not sufficient." Ivey v. Bd. of Regents, 673 F.2d 266, 268 (9th Cir. 1982) (citations omitted).

In an amended complaint, the allegations must be set forth in numbered paragraphs. Fed. R. Civ. P. 10(b). Plaintiff may join multiple claims if they are all against a single defendant. Fed. R. Civ. P. 18(a). If plaintiff has more than one claim based upon separate transactions or occurrences, the claims must be set forth in separate paragraphs. Fed. R. Civ. P. 10(b).

The federal rules contemplate brevity. See Galbraith v. County of Santa Clara, 307 F.3d 1119, 1125 (9th Cir. 2002) (noting that "nearly all of the circuits have now disapproved any heightened pleading standard in cases other than those governed by Rule 9(b)"); Fed. R. Civ. P.

84; cf. Rule 9(b) (setting forth rare exceptions to simplified pleading). Plaintiff's claims must be set forth in short and plain terms, simply, concisely and directly. See Swierkiewicz v. Sorema N.A., 534 U.S. 506, 514 (2002) ("Rule 8(a) is the starting point of a simplified pleading system, which was adopted to focus litigation on the merits of a claim."); Fed. R. Civ. P. 8.

An amended complaint must be complete in itself without reference to any prior pleading. E.D. Cal. R. 220. Once plaintiff files an amended complaint, the original pleading is superseded. By signing an amended complaint, plaintiff certifies he has made reasonable inquiry and has evidentiary support for his allegations, and for violation of this rule the court may impose sanctions sufficient to deter repetition by plaintiff or others. Fed. R. Civ. P. 11.

For the foregoing reasons, and good cause appearing, IT IS HEREBY ORDERED as follows:

1. Plaintiff's first amended complaint is dismissed.
2. Plaintiff claims under the ADA and RA are dismissed with leave to amend.
3. Plaintiff is granted thirty days from the date of service of this order to file an amended complaint that complies with the requirements of the Federal Rules of Civil Procedure and the Local Rules of Practice; the amended complaint must bear the docket number assigned this case and must be labeled "Second Amended Complaint"; failure to file an amended complaint in accordance with this order may result in a recommendation that this action be dismissed.
4. The Clerk of the Court is directed to send plaintiff a copy of the prisoner complaint form used in this district.

Further, IT IS RECOMMENDED that:

1. Plaintiff's claims under the Equal Protection and Due Process Clauses of the Fourteenth Amendment be dismissed without leave to amend; and
2. Plaintiff's claim for deliberate indifference under the Eighth Amendment be dismissed without leave to amend.

These findings and recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days

after being served with these findings and recommendations, plaintiff may file written objections with the court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Plaintiff is advised that failure to file objections within the specified time may result in waiver of the right to appeal the district court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated: March 19, 2019

/s/ Deborah Barnes
DEBORAH BARNES
UNITED STATES MAGISTRATE JUDGE

DLB:9
DLB1/prisoner-civil rights/hill0184.scrn lta