UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIORNIA

| | |
|---|---|
| KENNETH HILL,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>J. AYALA,<br><br>　　　　　Defendant. | No. 2:19-cv-0184 TLN DB P<br><br><br>FINDINGS AND RECOMMENDATIONS |

Plaintiff is a state prisoner proceeding pro se with a civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff alleges defendant discriminated against him based on his participation in a mental health program in violation of the Americans with Disabilities Act ("ADA") and the Rehabilitation Act ("RA"). Before the court is defendant's motion for summary judgment. For the reasons set forth below, this court will recommend defendant's motion be granted.

**BACKGROUND**

This case is proceeding on plaintiff's second amended complaint ("SAC"). (ECF No. 18.) Plaintiff contends he was transferred to California State Prison, Sacramento ("CSP-Sac") in 2017 so that he could enter the Enhanced Outpatient Program ("EOP"), a mental health treatment program. At that time, plaintiff was eligible for family overnight visits. In July 2017, plaintiff submitted a request for family visits to defendant Ayala. Ayala first told plaintiff that he was not eligible for family visits because he was an EOP participant. She then denied his request on the

ground that plaintiff did not have a marriage certificate on file and, later, because he had a pending rules violation report ("RVR"). Plaintiff challenges both reasons as pretexts for discrimination based on his EOP participation. First, plaintiff alleges he did, in fact, have a marriage certificate on file. Second, plaintiff contends that an unresolved RVR was not a proper basis to deny his family visiting request. Eventually, Ayala granted his request.

Plaintiff later attempted to be placed on a waiting list for a prison job. Ayala informed him that the prison did not permit EOP participants to work in the jobs he was seeking. However, in her written denial of plaintiff's application, Ayala stated that it was due to plaintiff's receipt of several RVRs. Three months later, Ayala's supervisor granted plaintiff's request and he was placed on a job list.

On screening, this court found plaintiff stated a potential claim under the ADA and the RA against defendant Ayala, the only remaining defendant in this case, for her denials of plaintiff's requests for a family visit and request for a job. (ECF No. 21.)

On February 17, 2021, defendant filed the present motion for summary judgment. (ECF No. 69.) Plaintiff filed an opposition (ECF No. 73) and defendant filed a reply (ECF No. 76).

**MOTION FOR SUMMARY JUDGMENT**

**I. Summary Judgment Standards under Rule 56**

Summary judgment is appropriate when the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Under summary judgment practice, the moving party "initially bears the burden of proving the absence of a genuine issue of material fact." In re Oracle Corp. Sec. Litigation, 627 F.3d 376, 387 (9th Cir. 2010) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). The moving party may accomplish this by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" or by showing that such materials "do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A), (B).

When the non-moving party bears the burden of proof at trial, "the moving party need only prove that there is an absence of evidence to support the nonmoving party's case." Oracle Corp., 627 F.3d at 387 (citing Celotex, 477 U.S. at 325.); see also Fed. R. Civ. P. 56(c)(1)(B). Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. See Celotex, 477 U.S. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment . . . is satisfied." Id. at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party typically may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. See Fed. R. Civ. P. 56(c)(1); Matsushita, 475 U.S. at 586 n.11. However, a complaint that is submitted in substantial compliance with the form prescribed in 28 U.S.C. § 1746 is a "verified complaint" and may serve as an opposing affidavit under Rule 56 as long as its allegations arise from personal knowledge and contain specific facts admissible into evidence. See Jones v. Blanas, 393 F.3d 918, 923 (9th Cir. 2004); Schroeder v. McDonald, 55 F.3d 454, 460 (9th Cir. 1995) (accepting the verified complaint as an opposing affidavit because the plaintiff "demonstrated his personal knowledge by citing two specific instances where correctional staff members . . . made statements from which a jury could reasonably infer a retaliatory motive"); McElyea v. Babbitt, 833 F.2d 196, 197-98 (9th Cir. 1987); see also El Bey v. Roop, 530 F.3d 407, 414 (6th Cir. 2008) (Court reversed the district court's grant of summary judgment because it "fail[ed] to account for the fact that El Bey signed his complaint under penalty of perjury pursuant to 28 U.S.C. § 1746. His verified complaint therefore carries the same weight as would

an affidavit for the purposes of summary judgment."). The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

To show the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 631 (9th Cir. 1987). Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (citations omitted).

"In evaluating the evidence to determine whether there is a genuine issue of fact," the court draws "all reasonable inferences supported by the evidence in favor of the non-moving party." Walls v. Central Contra Costa Transit Auth., 653 F.3d 963, 966 (9th Cir. 2011). It is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (citation omitted).

**II. Analysis**

Defendant first argues that plaintiff did not exhaust his claim of job discrimination. In her second argument, defendant contends she did not discriminate against plaintiff based on his participation in a mental health program when she denied his application for family visiting. Finally, defendant argues that plaintiff fails to demonstrate that she acted pursuant to a prison policy, as required under the ADA and RA.

**A. Exhaustion of Job Claim**

    **1. Legal Standards for Exhaustion of Administrative Remedies**

        **a. PLRA Exhaustion Requirement**

The Prison Litigation Reform Act of 1995 ("PLRA") mandates that "[n]o action shall be brought with respect to prison conditions under section 1983 . . . or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Compliance with deadlines and other critical prison grievance rules is required to exhaust. Woodford v. Ngo, 548 U.S. 81, 90 (2006) (exhaustion of administrative remedies requires "using all steps that the agency holds out, and doing so properly"). "[T]o properly exhaust administrative remedies prisoners 'must complete the administrative review process in accordance with the applicable procedural rules,' - rules that are defined not by the PLRA, but by the prison grievance process itself." Jones v. Bock, 549 U.S. 199, 218 (2007) (quoting Woodford, 548 U.S. at 88); see also Marella v. Terhune, 568 F.3d 1024, 1027 (9th Cir. 2009) ("The California prison system's requirements 'define the boundaries of proper exhaustion.'" (quoting Jones, 549 U.S. at 218)).

Although "the PLRA's exhaustion requirement applies to all inmate suits about prison life," Porter v. Nussle, 534 U.S. 516, 532 (2002), the requirement for exhaustion under the PLRA is not absolute, Albino v. Baca, 747 F.3d 1162, 1172-72 (9th Cir. 2014) (en banc). As explicitly stated in the statute, "[t]he PLRA requires that an inmate exhaust only those administrative remedies 'as are available.'" Sapp v. Kimbrell, 623 F.3d 813, 822 (9th Cir. 2010) (quoting 42 U.S.C. § 1997e(a)) (administrative remedies plainly unavailable if grievance was screened out for improper reasons); see also Nunez v. Duncan, 591 F.3d 1217, 1224 (9th Cir. 2010) ("Remedies that rational inmates cannot be expected to use are not capable of accomplishing their purposes and so are not available."). "We have recognized that the PLRA therefore does not require exhaustion when circumstances render administrative remedies 'effectively unavailable.'" Sapp, 623 F.3d at 822 (citing Nunez, 591 F.3d at 1226); accord Brown v. Valoff, 422 F.3d 926, 935 (9th Cir. 2005) ("The obligation to exhaust 'available' remedies persists as long as some remedy

////

remains 'available.' Once that is no longer the case, then there are no 'remedies . . . available,' and the prisoner need not further pursue the grievance.").

Dismissal of a prisoner civil rights action for failure to exhaust administrative remedies must generally be brought and decided pursuant to a motion for summary judgment under Rule 56, Federal Rules of Civil Procedure. Albino, 747 F.3d at 1168. "Nonexhaustion" is "an affirmative defense" and defendants have the burden of "prov[ing] that there was an available administrative remedy, and that the prisoner did not exhaust that available remedy." Id. at 1171-72. A remedy is "available" where it is "capable of use; at hand." Williams v. Paramo, 775 F.3d 1182, 1191 (9th Cir. 2015) (quoting Albino, 747 F.3d at 1171). Grievance procedures that do not allow for all types of relief sought are still "available" as long as the procedures may afford "some relief." Booth v. Churner, 532 U.S. 731, 738 (2001). If a defendant meets the initial burden, a plaintiff then must "come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." Albino, 747 F.3d at 1172. Remedies are "effectively unavailable" where they are "ineffective, unobtainable, unduly prolonged, inadequate, or obviously futile." Id. (quoting Hilao v. Estate of Marcos, 103 F.3d 767, 778 n.5 (9th Cir. 1996)). "[T]he ultimate burden of proof," however, never leaves the defendant. Id.

### b. California's Inmate Appeal Process

In California, prisoners may appeal "any policy, decision, action, condition, or omission by the department or its staff that the inmate or parolee can demonstrate as having a material adverse effect upon his or her health, safety, or welfare." Cal. Code Regs. tit. 15, § 3084.1(a). At the time plaintiff filed his appeals,[1] inmates in California proceeded through three levels of appeal to exhaust the appeal process: (1) formal written appeal on a CDC 602 inmate appeal form; (2) second level appeal to the institution head or designee; and (3) third level appeal to the Director of the California Department of Corrections and Rehabilitation ("CDCR"). Cal. Code Regs. tit.

---

[1] In 2020, California changed the grievance system from a three-tier system to a two-tier system. That change was effective in June 2020, after plaintiff initiated the relevant appeals in the present case. See Cal. Code Regs. tit. 15, § 3480. All citations to the California code in the text refer to the prior law.

15, § 3084.7. Under specific circumstances, the first level review may be bypassed. Id. The third level of review constitutes the decision of the Secretary of the CDCR and exhausts a prisoner's administrative remedies. See id. § 3084.7(d)(3). However, a cancellation or rejection decision does not exhaust administrative remedies. Id. § 3084.1(b).

A California prisoner is required to submit an inmate appeal at the appropriate level and proceed to the highest level of review available to him. Butler v. Adams, 397 F.3d 1181, 1183 (9th Cir. 2005); Bennett v. King, 293 F.3d 1096, 1098 (9th Cir. 2002). In submitting a grievance, an inmate is required to "list all staff members involved and shall describe their involvement in the issue." Cal. Code Regs. tit. 15, § 3084.2(3). Further, the inmate must "state all facts known and available to him/her regarding the issue being appealed at the time," and they must "describe the specific issue under appeal and the relief requested." Id. § 3084.2(a)(4). The appeal should not involve multiple issues that do not derive from a single event. Id. § 3084.6(b)(8).

An inmate has thirty calendar days to submit their grievance from the occurrence of the event or decision being appealed, or "upon first having knowledge of the action or decision being appealed." Cal. Code Regs. tit. 15, § 3084.8(b).

### 2. Discussion of Exhaustion of Job Claim

Initially, this court notes that defendant's Undisputed Fact No. 4 appears to be an error because it is both unclear and could be construed to conflict with Undisputed Fact No. 2. Undisputed Fact No. 4 states:

> None of the appeals that Plaintiff submitted to the CSP-Sacramento Appeals Office from August 13, 2017 through June 15, 2018 only SAC-V-17-3501 discussed any allegations relating to a wrongful denial of his job applications.

(See ECF Nos. 69-3 at 2; 76-1 at 3.) Plaintiff admitted this fact. One strained reading of this statement is that the appeal to the second level of appeal no. SAC-V-17-3501 discussed plaintiff's allegations regarding job applications. However, that reading would directly conflict with defendant's Undisputed Fact No. 2 which states that none of the appeals plaintiff filed with the CSP-Sac Appeals Office discussed wrongful denial of job applications. Plaintiff denied Undisputed Fact No. 2.

7

The records provided by both parties belie plaintiff's contention that Fact No. 2 is disputed. Plaintiff provides a copy of his application to participate in the jobs program. (ECF No. 73 at 15.) That form shows defendant's denial of his request and plaintiff's petition for review by a supervisor. (Id. at 16.) Plaintiff does not allege, and the rules do not provide, that his request for supervisory review exhausted an appeal of defendant's decision under the PLRA. See Cal. Code Regs. tit. 15, § 3084.7 (compliance with appeals process starts with submission of CDCR form 602). The only appeal provided to the court in which plaintiff mentioned the job application was his appeal of the second level response to appeal no. SAC-V-17-3501 regarding the denial of family visiting. Plaintiff did not raise the job application issue with the CSP-Sac Appeals Office. He raised it only in his appeal to CDCR's Director, the third level of review. (See ECF No. 73 at 10-17.)

The question, then, is whether plaintiff's mention of the denial of a job for the first time in an appeal of a second level response satisfied the exhaustion requirement. California regulations require new issues to be raised in a separate appeal. California Code of Regulations, title 15, § 3084.1(b) states: "Administrative remedies shall not be considered exhausted relative to any new issue, information, or person later named by the appellant that was not included in the originally submitted [appeal] and addressed through all required levels of administrative review up to and including the third level." Thus, new claims are not permitted as the appeal moves through the levels of review. A prisoner does not exhaust administrative remedies when he includes new issues from one level of review to another. Mitchell v. Pena, No. 1:11-cv-01205-JLT LJO PC, 2013 WL 3733593, at *5 (E.D. Cal. July 15, 2013) (citing Rodgers v. Tilton, CIV. No. 2:07–02269–WBS–DAD, 2011 WL 3925085, at 2 (E.D. Cal. Sept.1, 2011), rep. and reco. adopted, 2013 WL 4009750 (E.D. Cal. Aug. 5, 2013); Dawkins v. Butler, No. 09CV1053 JLS (DHB), 2013 WL 2475870, *8 (S.D. Cal. July 7, 2013) (a claim made for the first time in plaintiff's request for Third Level review was insufficient to exhaust the issue where it was not included in the original appeal); see also Woodford v. Ngo, 548 U.S. 81, 90-93 (2006) (Exhaustion under the PLRA requires "proper exhaustion," which "demands compliance with an agency's deadlines and other critical procedural rules.").

Plaintiff's contention that defendant discriminated against him by rejecting his request for a job is unexhausted because he raised that issue for the first time in his appeal to the third level of review. Plaintiff does not argue, and there is no indication, that administrative remedies were unavailable to him. Plaintiff's claim under the ADA and RA that defendant discriminated against him when she denied his job program application should be dismissed.

### B. Family Visits Claim

Defendant contends she did not intentionally discriminate against plaintiff based on his participation in the EOP. She further contends that plaintiff fails to allege or show that she discriminated against him pursuant to a prison policy, as required by the ADA and RA.

#### 1. Legal Standards

##### a. ADA and RA

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Title II authorizes suits by private citizens for money damages against public entities, United States v. Georgia, 546 U.S. 151, 153 (2006), and state prisons "fall squarely within the statutory definition of 'public entity,'" Pennsylvania Dept. of Corrs. v. Yeskey, 524 U.S. 206, 210 (1998).

The proper defendant in an ADA action is the public entity responsible for the alleged discrimination. Georgia, 546 U.S. at 153. State correctional facilities are "public entities" within the meaning of the ADA. See 42 U.S.C. § 12131(1)(A) & (B); Yeskey, 524 U.S. at 210; Armstrong v. Wilson, 124 F.3d 1019, 1025 (9th Cir. 1997). However, a state official sued in her official capacity is, in effect, a suit against the governmental entity and is an appropriate defendant in an ADA action. See Applegate v. CCI, No. 1:16-cv-1343 MJS (PC), 2016 WL 7491635, at *5 (E.D. Cal. Dec. 29, 2016) (citing Miranda B. v. Kitzhaber, 328 F.3d 1181, 1187-88 (9th Cir. 2003); Kentucky v. Graham, 473 U.S. 159, 165 (1985)); see also Vinson v. Thomas, 288 F.3d 1145, 1156 (9th Cir. 2002) ("[A] plaintiff cannot bring an action under 42 U.S.C. § 1983

////

against a State official in her individual capacity to vindicate rights created by Title II of the ADA.").

"Generally, public entities must 'make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability, unless the public entity can demonstrate that making the modifications would fundamentally alter the nature of the service, program, or activity.'" Pierce v. County of Orange, 526 F.3d 1190, 1215 (9th Cir. 2008) (quoting 28 C.F.R. § 35.130(b)(7)). The state is responsible for providing inmates with "the fundamentals of life, such as sustenance, the use of toilet and bathing facilities, and elementary mobility and communication," and as such, the ADA requires that these "opportunities" be provided to disabled inmates "to the same extent that they are provided to all other detainees and prisoners." Armstrong v. Schwarzenegger, 622 F.3d 1058, 1068 (9th Cir. 2010); see also Pierce, 526 F.3d at 1220 (finding ADA violation where defendant failed to articulate "any legitimate rationale for maintaining inaccessible bathrooms, sinks, showers, and other fixtures in the housing areas and commons spaces assigned to mobility- and dexterity-impaired detainees").

In order to state a claim that a public program or service violated Title II of the ADA, a plaintiff must show: (1) he is a "qualified individual with a disability;" (2) he was either excluded from participation in or denied the benefits of a public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (3) such exclusion, denial of benefits, or discrimination was by reason of his disability. McGary v. City of Portland, 386 F.3d 1259, 1265 (9th Cir. 2004); see also Lee v. City of Los Angeles, 250 F.3d 668, 691 (9th Cir. 2001) ("If a public entity denies an otherwise 'qualified individual' 'meaningful access' to its 'services, programs, or activities' 'solely by reason of' his or her disability, that individual may have an ADA claim against the public entity.").

Furthermore, "[t]o recover monetary damages under Title II of the ADA, a plaintiff must prove intentional discrimination on the part of the defendant." Duvall v. County of Kitsap, 260 F.3d 1124, 1138 (9th Cir. 2001). The standard for intentional discrimination is deliberate indifference, "which requires both knowledge that a harm to a federally protected right is

substantially likely, and a failure to act upon that likelihood." Id. at 1139. The ADA plaintiff must both "identify 'specific reasonable' and 'necessary' accommodations that the state failed to provide" and show that the defendant's failure to act was "a result of conduct that is more than negligent, and involves an element of deliberateness." Id. at 1140.

To establish a violation of section 504 of the RA, a plaintiff must show "(1) she is handicapped within the meaning of the [RA]; (2) she is otherwise qualified for the benefit or services sought; (3) she was denied the benefit or services solely by reason of her handicap; and (4) the program providing the benefit or services receives federal financial assistance." Lovell v. Chandler, 303 F.3d 1039, 1052 (9th Cir. 2002). The elements of claims under the ADA and the RA are functionally the same. See Atcherley v. Hanna, No. 2:13-cv-0576 AC P, 2014 WL 2918852, at *7 (E.D. Cal. June 26, 2014).

### b. Requirements for Official Capacity Claims

A plaintiff in a § 1983 action who is pursuing a defendant in their official capacity must show that a policy or custom of the governmental agency "played a part in the violation of federal law." Hafer v. Melo, 502 U.S. 21, 25 (1991) ("Because the real party in interest in an official-capacity suit is the governmental entity and not the named official, the entity's policy or custom must have played a part in the violation of federal law." (citation and internal quotation marks omitted)). This requirement applies to official capacity suits under the ADA and RA. See Hayes v. Voong, 709 F. App'x 494, 495 (9th Cir. 2018) (affirming dismissal of prisoner's ADA claims against defendants in their official capacities because prisoner's complaint failed to identify a policy or custom of the state that allegedly violated federal law); Perry v. Brevick, No. 2:21-cv-0065 KJN P, 2021 WL 352374 (E.D. Cal. Feb. 2, 2021) (dismissing prisoner's ADA claims based on failure to identify a policy of custom of the state that violated federal law); Hernandez v. Marcelo, No. 1:19-cv-01219 NONE JLT, 2020 WL 6075648, at *4 (E.D. Cal. Oct. 15, 2020) (same), rep. and reco. adopted, 2021 WL 1164400 (E.D. Cal. Mar. 26, 2021); Oliver v. Shelton, No. 2:18-cv-1809 KJM DMC, 2020 WL 2216943, at *3 (E.D. Cal. May 7, 2020), rep. and reco. adopted, 2021 WL 217428 (E.D. Cal. Jan. 21, 2021; Dixon v. Cty. of Sonoma, No. 18-CV-07137-EMC, 2020 WL 4932061, at *11 (N.D. Cal. July 1, 2020); Calloway v. Akanno, No. 1:13-

cv-00747-SAB-PC, 2016 WL 6599734, at *7 (E.D. Cal. Nov. 8, 2016). The "first inquiry in any case alleging" liability of a governmental agency "under § 1983 is the question whether there is a direct causal link between" an agency "policy or custom and the alleged constitutional deprivation." City of Canton, Ohio v. Harris, 489 U.S. 378, 385 (1989).

### 2. Undisputed Facts[2]

- During 2017 and 2018, prisoners used a standardized form, CDC 1046, for family visiting applications at California State Prison, Sacramento. The CDC 1046 form provided instructions to the reviewing correctional counselor in order to properly evaluate family visiting applications.

- The CDC 1046 form requires the correctional counselor to verify that the information on the family visiting application is true and correct. This information includes, but is not limited to family relationship, privilege group, disciplinary record, and status as approved visitors.

- The CDC 1046 form also requires the correctional counselor to either approve or deny the family visiting application. The family visiting application may be denied on any of the following grounds: (1) Inmate not eligible for Family Visiting; (2) Records indicate inmate and proposed visitor are not legally married; (3) The visitor is not an approved visitor; (4) Inmate or visitor is on non-contact visiting status; or (5) Other.

- On August 13, 2017 plaintiff submitted a family visiting application to defendant using a CDC 1046 form requesting a family visit with Letisha Delories Adams-Hill.

- As part of her duties as a correctional counselor, defendant would review, and approve or deny inmate family visiting applications.

////

////

---

[2] These are the material facts set out by defendant and admitted by plaintiff. (See ECF No. 69-3 and ECF No. 73 at 2-7.)

### 3. Analysis of Family Visits Claim

Plaintiff alleges defendant violated his rights when she refused him family visiting based on his EOP status. Plaintiff contends that defendant used the supposed absence of a marriage certificate in plaintiff's file as a pretense for the discrimination. Plaintiff further alleges defendant denied him family visits a second time, also based on his participation in the mental health program, but claimed the denial was based on plaintiff's RVR.

Plaintiff makes two allegations that could be construed to identify a governmental policy that lead to a violation of his rights. First, plaintiff alleges that "EOP patients on A-Fac. at CSP SAC were routinely denied participation in the F.V.P. [Family Visiting Program] . . . just because they were mental health patients in the EOP." (ECF No. 18 at 12.) Second, plaintiff alleges that a change to the family visiting policy based on an inmate's rules violations violated his rights. (ECF No. 18 at 12-14; ECF No. 73 at 28.) Neither of these allegations have evidentiary support.

Plaintiff provides no factual basis for his claim that EOP participants were regularly denied family visiting. Plaintiff provides only information regarding the denial of his own application. Plaintiff's allegations in the SAC show that he felt he was qualified for family visiting under prison rules. Specifically, plaintiff alleged: "On 7-22-17, plaintiff was release[d] to A-facility at CSP SAC, an EOP treatment facility with his custody set at Medium-B, his work group and privilege group set at A1/A, with no factors excluding him from continuing his participation in CDCR's Family Visiting Program (FVP) at CSP SAC." (ECF No. 18 at 9.) In neither the remainder of his SAC nor in his opposition to the summary judgment motion does plaintiff provide any support for, or even mention, his conclusory assertion that other EOP inmates were discriminated against in family visiting.

Further, it is undisputed that the prison rules, as reflected in form CDC 1046, required correctional counselors to review applications for family visiting for compliance with the visiting rules. The rules permitted denial of a family visiting application because, among other reasons, the inmate was not eligible for family visiting or records indicated the inmate and proposed

////

13

visitor were not legally married. Plaintiff does not show the procedure established in form CDC 1046 was regularly disregarded by prison staff.

Plaintiff also fails to demonstrate that the alleged change in family visiting rules was made for the purpose of discriminating against inmates participating in mental health programs or even that it had the effect of doing so. Plaintiff contends that CDCR Director Kernan issued a memorandum denying family visits to inmates who had an "A or B offense within the last twelve months." Plaintiff contends that this memorandum changed the FVP set out in the regulations without compliance with California's Administrative Procedures Act. (See ECF No. 18 at 13.) According to plaintiff, California Code of Regulations, Title 15, § 3177(b)(2) provides that family visiting may be denied only if an inmate had been found guilty of a rules violation.

On screening, the court found plaintiff failed to state claims cognizable under § 1983 regarding his complaints about Kernan's memorandum. (ECF Nos. 21 and 26.) Specifically, with respect to plaintiff's claims under the ADA and RA, the court found that plaintiff failed to allege that the rule change, if any, was made to discriminate against inmates participating in the prison's mental health programs.[3]

In addition to failing to make any showing of the existence of a discriminatory policy or custom, plaintiff fails to provide evidence showing causation - that defendant was acting pursuant to such a policy or custom. First, with respect to plaintiff's allegation that defendant relied on an improper rule change (see ECF No. 73 at 19), he fails to show that the alleged rule change, as described above, was made to discriminate against inmates in the mental health programs.

Second, plaintiff alleges only that defendant, acting on her own, failed to permit him access to family visiting. In the SAC, plaintiff consistently described the rules applicable to family visiting. He contends defendant failed to comply with those rules when she denied his family visiting applications. (See ECF No. 18 at 9-11.)

---

[3] On screening, the court dismissed plaintiff's claims against all defendants besides defendant Ayala. This case is proceeding solely on plaintiff's claims that defendant Ayala violated his rights under the ADA and RA because she discriminated against him based on his participation in the EOP.

14

Plaintiff fails to show any disputed facts regarding whether defendant acted pursuant to a governmental policy or custom.  Because proving the existence of a policy or custom is a necessary predicate to proving an official capacity claim, City of Canton, Ohio, 489 U.S. at 385, the court need not reach any of the other issues raised in defendant's motion for summary judgment.

Plaintiff's claims that defendant denied him family visiting based on his EOP participation in violation of the ADA and RA should fail.

For the foregoing reasons, IT IS HEREBY RECOMMENDED that defendant's motion for summary judgment (ECF No. 69) be granted on the following grounds:

1. Plaintiff's claim that defendant discriminated against him in violation of the ADA and RA when she denied his job application should be dismissed for plaintiff's failure to exhaust his administrative remedies; and

2. Plaintiff's claim that defendant discriminated against him in violation of the ADA and RA when she denied his family visiting application should be denied.

These findings and recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty days after being served with these findings and recommendations, either party may file written objections with the court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  The parties are advised that failure to file objections within the specified time may result in waiver of the right to appeal the district court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated:  August 4, 2021

DEBORAH BARNES
UNITED STATES MAGISTRATE JUDGE

DLB:9/DB prisoner inbox/civil rights/S/hill0184.msj fr